This appeal is from a final decree of the Circuit Court of Jefferson County, Birmingham Division, denying appellant's request for a hearing on appellee's petition for writ of habeas corpus. Appellant also claims that the circuit court erred in refusing to accord her a trial on her counterclaim for damages and modification of a Florida divorce decree.
This matter began when appellee filed a petition for a writ of habeas corpus in the Circuit Court of Jefferson County on August 3, 1976.
Appellee's petition sought physical custody of his eight year old daughter. In his petition appellee alleged that appellant and he had been divorced in Broward County, Florida in April 1972 and that at that time she (appellant) had been awarded custody of the child in question, Elisa Anne Walden. In July 1975 the same Florida court which had divorced the parties awarded appellee legal custody of Elisa Anne. Almost a year later, in May 1976, an agreement was entered into by the parties and the Florida court whereby appellant was permitted to have Elisa Anne visit with her in Alabama from July 2, 1976 through August 2, 1976. After Elisa Anne went to visit her mother (appellant), appellee was informed that Elisa Anne was about to be taken to Tennessee and that she would not be returned to him as required by the agreement. Appellee then filed a petition for habeas corpus in the Circuit Court of Jefferson County on August 3, 1976. The circuit court, pursuant to that petition, ordered appellant to surrender the child to appellee and for appellee to return the child to the jurisdiction of the Florida court.
On August 4, 1976 appellant filed a motion to strike or dismiss the petition. She also filed an answer to the petition and a *Page 374 
counterclaim containing two counts. Count One sought damages for malicious abuse of process. This count was based on appellant's allegation that appellee had sought the writ of habeas corpus without probable cause and that appellee's action falsely accused her of the wrongful detention of Elisa Anne, causing her great embarrassment and unnecessary expense. Count Two of appellant's counterclaim sought to have the Florida decree awarding custody of Elisa Anne to appellee modified by returning custody of Elisa Anne to appellant.
Appellee then filed a motion asking the court to strike the counterclaim. The primary basis of this motion was (1) that appellee was a resident of Florida and (2) that the counterclaim violated the agreement previously entered into by the parties not to invoke the jurisdiction of another court for the purpose of deciding the custody of the child.
The circuit court denied this motion and appellant's motion to strike or dismiss the petition for writ of habeas corpus.
Next, appellant filed a motion seeking to have Elisa Anne examined physically and psychologically by doctors in Birmingham. She also filed a motion to compel appellee to attend a deposition hearing in Birmingham. The motion to have the child examined was denied but appellee did appear at the deposition hearing. However, upon appellee's refusal to go forward with the examination until counsel for appellant agreed to include the standard stipulations relating to objections, the hearing was terminated.
Appellant subsequently asked for a default judgment on her counterclaim. And after a hearing on this matter, the circuit court ordered a default judgment to be entered against appellee if he failed to file an answer to appellant's counterclaim within thirty days.[1] The court also issued the following orders: (1) appellee was to submit to a deposition hearing; (2) appellee was to give sufficient money to appellant's attorney to cover the cost of transportation and three nights' lodging in order that appellant could go to Fort Lauderdale, Florida to visit Elisa Anne, and (3) appellee was to have Elisa Anne in court on May 2, 1977 for an in camera session with the judge.
On March 11, 1977 appellant filed a petition asking that the rule nisi issue to appellee directing him to show cause as to why he should not be held in contempt for his failure to deposit $200 with appellant's attorney and for his failure to attend the deposition hearing. In answer to the petition for rule nisi, appellee averred that he had attended the deposition hearing but refused to be sworn because the attorney for appellant would not agree to the inclusion in the record of the usual stipulations relating to objections. He also claimed that he had sent a check for $200 to appellant's counsel.
On May 2, 1977, the date the rule nisi was heard, appellee failed to produce Elisa Anne. The court found appellee in contempt for failure to have the child in court and for failing to deposit the money with appellant's counsel as he had previously been ordered to do. The court then remanded him to the custody of the sheriff of Jefferson County, Alabama.
However, nine days later the circuit court ordered appellee to be released from the custody of the sheriff. The court's order stated that the money appellee was required to pay had been paid, and that appellee's refusal to produce the child in the Alabama court was authorized by the directives of the Florida court.
On July 26, 1977, after being informed that appellant did not receive a hearing on appellee's petition for writ of habeas corpus and her counterclaim asking for damages and modification of the Florida divorce decree, the circuit court stated that it would conduct no more hearings on any issue remaining before the court. The court then denied appellant's request for a hearing on the petition for habeas corpus and the counterclaim. *Page 375 
Appellant argues that she has been denied due process of law because she was not permitted to appear at a hearing on the petition for writ of habeas corpus and have her opposition noted. Furthermore, she urges that the court's refusal to give her a hearing on her counterclaim is a deprivation of due process of law.
Appellee contends that the trial court acted properly in refusing to grant a hearing on appellee's petition for habeas corpus. Likewise, appellee asserts that appellant was not entitled to a hearing or trial on the merits of her counterclaim. The basis of appellee's contention in regard to these matters is the doctrine of "forum non conveniens." Appellee urges that the trial court recognized that a hearing in Alabama on the petition for habeas corpus would be futile and inconvenient in view of the fact that a Florida court had retained jurisdiction over any subsequent modification of the award of custody. Appellee further argues that appellant's counterclaim for abuse of process was merely a device promulgated to deceive the trial court into taking jurisdiction over the custody matter.
Simply stated, the doctrine of "forum non conveniens" means that even though adequate grounds for the exercise of jurisdiction exist, a court may in its discretion refuse to exercise its jurisdiction — i.e., it may stay or dismiss an action — if it determines that the forum in which the action is brought is an unfair or seriously inconvenient place for trial as to any party and a more convenient place is available. Restatement (Second) of Conflict of Laws, § 84 (1971). And in deciding whether the local forum is an "unfair" or "seriously inconvenient" place for trial, the trial court usually weighs the following factors: (1) plaintiff's choice or preference of forum; (2) the residence of the parties; (3) the residence of witnesses and availability of process for compelling their appearance at trial; (4) the ease of access to sources of proof and the costs involved in obtaining such proof; (5) the costs of bringing witnesses and parties to the local forum; (6) plaintiff's motives in instigating suit in the local forum,i.e. for purposes of forum shopping or harassing the defendant; (7) the availability of an alternative forum; (8) the likelihood of the local forum's judgment being enforceable; and (9) the interest of the forum state in terms of avoiding the cost and time involved in litigating the claim. See Restatement (Second) of Conflict of Laws, § 84 and comments thereto (1971). Thus, the necessity of examining these factors in order to determine the applicability of the doctrine of "forum non conveniens" indicates that a hearing by the trial court was warranted so that the court could reach a decision on whether to stay or dismiss appellee's petition for habeas corpus on the basis of "forum non conveniens."[2] See Wilburn v. Wilburn,192 A.2d 797, 9 A.L.R.3d 538 (D.C.App. 1963).
Moreover, Alabama is one of a number of jurisdictions which recognizes that a petition for habeas corpus may be used to determine the right of a party to have custody of a child.Chisolm v. Crook, 272 Ala. 192, 130 So.2d 191 (1961); Berry v.Berry, 219 Ala. 403, 122 So. 615 (1929). And since the issue of custody involves equitable principles, the scope of the trial court's inquiry in a hearing on a petition for habeas corpus is very broad. In fact, the legal rights of the parents are subordinate to the welfare of the child and the trial court has authority in acting on the petition to determine not only whether a parent's custody of the child is wrongful but also whether the best interests of the child would be served by leaving it with the defendant-parent. Berry v. Berry, supra.
In the instant case appellee contends that the Florida court had assumed jurisdiction over the child, and that the Alabama court in the habeas corpus proceeding only had the power to determine whether the mother's (appellant's) custody of the child was wrongful, and if so, to order that the child be restored to the father so that he could return with the child to the jurisdiction of *Page 376 
the Florida court. However, our supreme court rejected a contention of this nature in Berry v. Berry. In Berry the court held that the habeas corpus proceeding had been treated as one in equity, and since the appellant-father had invoked the jurisdiction of the court by filing his petition, he was not in a position to question the trial court's jurisdiction to proceed according to equitable principles which included the right of that court to determine that the best interests of the child would be served by leaving the child with its mother.
Thus, it is clear that the trial court could have exercised jurisdiction in the habeas corpus proceeding to decide if the child should remain with her mother or if the little girl should be returned to her father. Accordingly, appellee's petition for habeas corpus involved the personal right of the appellant to the custody of the child and as the mother of the child she was entitled to due process in order to protect this right. See Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208,31 L.Ed.2d 551 (1972); May v. Anderson, 345 U.S. 528,73 S.Ct. 840, 97 L.Ed. 1221 (1953). Fundamental to the protection of her right to due process was her right to a fair hearing on the custody matter. Stanley v. Illinois, supra. And neither the existence of a prior decree of custody in another state nor the doctrine of "forum non conveniens" was sufficient to deprive the appellant of a hearing on the petition for habeas corpus which appellee had initiated. See May v. Anderson, supra.
Furthermore, even if the trial court could have validly invoked the doctrine of "forum non conveniens" without providing appellant a hearing on whether the doctrine was applicable or her right to present a defense to appellee's petition for habeas corpus, the court acted improperly in its failure to allow appellant a hearing on her counterclaim against appellee for abuse of process. The trial court had both personal and subject matter jurisdiction over appellant's tort action and, consequently, the court should have permitted appellant to be heard on this matter if for no other reason than to determine the sufficiency of her cause of action on the counterclaim.
The trial court's action in denying appellant a hearing on the various legal and factual matters involved in this case deprived appellant of her right to due process. Therefore, we reverse.
REVERSED AND REMANDED.
WRIGHT, P.J., and HOLMES, J., concur.
[1] Appellee subsequently filed an answer within the thirty day period. His answer challenged the court's jurisdiction over both the parties and the subject matter in question.
[2] Our discussion of the doctrine of "forum non conveniens" should not be construed as actual or tacit recognition that the doctrine was applicable or valid in this instance.